UNITED STATES MARINE CORPS
MARINE CORPS BASE
QUANTICO, VIRGINIA 22134-5001

IN REPLY REFER TO:
4200
B40
22 Aug 02

SEP 2002
RECEIVED
S.S.G.H. & R.

Slutes, Sakrison, Grant, Hill & Rubin, P.C.
33 North Stone, Suite 1100
Tucson, Arizona 85701-1489

Attention: Mr. James M. Sakrison

Ref: Contract M00264-99-C-0003 (Lan-Dale Co.)

Dear Mr. Sakrison,

I have reviewed Lan-Dale's revised claim, dated 6 May 2002, and all accompanying certifications, for alleged breach of contract. The claim represents a request for compensation for alleged breach of the settlement contract, M00264-99-C-0003. The total amount of the claim is for $8,006,938.17 and includes: cost of the aircraft ($275,000.00), lost profits in the amount of ($7,687,670.00) and attorney fees ($44,268.17).

The basic allegation is that the Contracting Officer failed to administer the settlement contract properly. Specifically, you allege that the Contracting Officer failed to arrange for the release of the aircraft as promised in an "as is, where is" condition. The claim further states that the Government failed to perform and that the Government has repeatedly committed acts of nonfeasance, malfeasance, and fraud.

In order to reach my decision, I have reviewed and considered the following:

1. The case file and all correspondence received to date,
2. Lan-Dale's submissions with attachments;
3. Discussions with Air Force and Navy personnel at the Aerospace Maintenance and Regeneration Center (AMARC), Davis-Monthan Air Force Base, AZ; and
4. Your response to my letter dated 23 May 2002.

As a result of my review I must deny your claim in its entirety.

My denial of your claim is based on the following:

1. Inconsistent statements. The original claim with attachments and existing documentation in the case file state that you attempted to tender $21,999 to AMARC but was refused. (Reasons and circumstances not provided) The letter of 3 July 2002, from Mr. Tom Hamilton representing the firm LaFont, Tunnell, Formby, La Font & Hamilton, L.L.P., stated that besides being irrelevant to the claim, the tender of payment to AMARC for demilitarization never occurred. Based on this information I am now forced to question the credibility of other

assertions of facts made in your behalf in previous correspondence regarding your claim and must also consider the possibility of your company having submitted a false claim.

2. Failure on your part to mitigate damages. According to AMARC personnel and your own admission, you have not attempted to tender payment for the demilitarization of your aircraft. AMARC personnel do not recall speaking with you or any representatives of your company since your engines were picked up. They indicate that you were informed of the required demilitarization of the aircraft as well as your payment obligations. Furthermore, agreement in principle to share the cost of demilitarization of the aircraft was reached in early 2001. Since you have not attempted to tender payment, I must conclude that the delay in taking possession of the aircraft is directly attributable to your failure to provide timely payment for the demilitarization to AMARC, and not to any misfeasance or malfeasance on the part of the Navy or AMARC.

3. Failure to comply with demilitarization procedures. Over the past several years your business has had various contracts with the Government for similar trades and purchase of surplus military equipment. Since you are in the business for doing this type of work, you either are or should be aware of the Government's requirements regarding the Defense Demilitarization Manual, DoD 4161.21-M-1 and the use of DLA Form 1488. Although you have asserted that the form is inappropriate for use after contract award, you have made no attempt to pursue alternatives to the DLA Form 1488 or provide the information that the form requires. From your many years of experience with Government surplus equipment, you are aware that equipment must often be removed from military aircraft before it is released to a civilian purchaser. I agree that the settlement contract included the phrase "As is, where is, with no warranties implied or operational condition guaranteed". That phrase, as used in the ordinary course of business, is intended to protect sellers from later claims from buyers that the property was unfit for its intended use. It should not be interpreted to imply that you were relieved of government regulations that apply to demilitarization. On the contrary paragraph C-3.2 stated that all costs for transportation, presentation, insurance, and incidentals related to the movement of the property shall be at the contractor's expense. If you feel that this language was ambiguous, as a joint drafter of the agreement, you should have brought this to our attention at the time of settlement. See paragraph C-5 of the settlement contract.

4. Lack of support for lost profits. There is insufficient evidence to support your claim of lost profits. You included no documentation that proves any contractual commitment between you and any other company to provide the aircraft leasing services in Mexico which form the basis for your claim of lost profits. There is nothing, aside from a bare assertion that you could have had such a contract and that how much you would have profited from such a contract that could support payment of $7,687,670.00.

Again, as stated above, you took no action for nearly two years to take possession of the aircraft. If such a lucrative business arrangement were in jeopardy, reasonable businessmen would have taken more aggressive measures to remove obstacles to the deal. Additionally, as noted above, the aircraft were sold in an "as is, where is" condition. Although AMARC makes every effort to store the aircraft under conditions which maximize their potential for future use, it is far from certain how many of the planes could have flown again. Therefore, your calculations, which are based on all five aircraft being placed in service and ignore the restoration costs for each aircraft, are illusory.

90 days from date of receipt is 12/16/0

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals (ASBCA) and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the ASBCA, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Gary Watson
Contracting Officer