DEPARTMENT OF THE NAVY
NAVY LITIGATION OFFICE
OFFICE OF THE GENERAL COUNSEL
BUILDING 36 WASHINGTON NAVY YARD
901 M STREET SE
WASHINGTON DC 20374-5012

24 November 1999

Mr. Tom Hamilton
LaFont, Tunnell, Formby, LaFont & Hamilton, LLP
Attorneys and Counselors
P.O. Box 1510
Plainview, Texas 79073-1510

Re: ASBCA No. 50829
Appeal of Lan-Dale Company
Under Contract No. M00264-92-C-0010

Dear Mr. Hamilton:

I recently learned that the parties are at odds regarding payment of presentation costs to prepare items for transfer to Mr. D'Alissandris. This issue is discussed in your letter of November 10, 1999.

The settlement meeting in May set forth a framework for the parties to reach a settlement. Whereas one of the items of discussion was the presentation costs, the appellant also wanted five additional engines and one additional T-39. The Government was reluctant to settle on these terms because the Marine Corps did not have such items in its own inventory. See my letter of 22 February 1999. During the course of the settlement discussions, Mr D'Alissandris presented an estimate that indicated that the engines were worth $7,000 apiece. Offer of May 11, 1998. The parties used this figure as a benchmark, but no final agreement could be made because the museum did not have the equipment, or, obviously, independent appraisals of the value.

The engines, as it turns out, have been independently appraised at $10,000 apiece, meaning that the appellant will receive $15,000 in additional value. Further, the additional T-39 appraised at $70,000, more than $25,000 above the highest figure shown on Mr. D'Alissandris' offer. Thus, as the deal is currently structured, Mr. D'Alissandris will receive approximately $40,000 ($15,000 plus $25,000) in excess value over estimates at the May meeting.

After the appraisal was completed, the Government forwarded to your offices a copy of the draft settlement agreement. Letter of 21 December 1998. Contemporaneous with that letter, you and I spoke regarding the structure of the agreement. I highlighted for your review such facts as the "substitute agreement" feature, and specifically, the terms in C-3 regarding the costs. I specifically stated that because the appraisals for the engines and new T-39 came in higher than expected, the contractor would have to bear the costs associated with presentation. On 22 December 1998, you conveyed to me your



This document is protected by FRE 408

client's acceptance of the terms in the draft. Now, on the eve of execution, after having the clause eleven months, your client raises an objection.

Your client's reversal of his position has serious implications. As indicated in your letter to the Board of February 24, 1999, the settlement document was part of the approval package. Approval of the deal was premised on the entire exchange of assets, including the appellant bearing the burden of the costs. Your client's tardy objections have the potential of nullifying the approval since it adds further expense to the Department of the Navy.

As I am sure your client is well aware, there has been a moratorium on exchanges for some time. Obtaining extraordinary approval for your client in this special circumstance has been difficult. I suggest that to start the process over would not meet either party's needs. Further, recognizing that Mr. D'Alissandris is obtaining at least $40,000 in consideration above what either party anticipated, he would hardly be justified in objecting to terms he did not object to eleven months earlier and which address relatively minor expenses

I am available to discuss this matter. My telephone number is (202) 685-6559, ext. 302.

Sincerely,

JOHN A. DIETRICH
Senior Trial Attorney



This document is protected by FRE 408.